# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
    Plaintiff,

vs.

LT. BROUGHTON, *et al.*,
    Defendants.

Case No. 1:19-cv-811

Cole, J.
Bowman, M.J.

**ORDER AND REPORT**
**AND RECOMMENDATION**

    Plaintiff initiated this action by filing a motion for leave to proceed *in forma pauperis* in connection with a pro se civil rights complaint brought pursuant to 42 U.S.C. § 1983. (Docs. 1, 2).[1] The undersigned subsequently found that the complaint submitted by plaintiff—which with exhibits totaled 99 pages—did not comply with Fed. R. Civ. P. 8(a), which requires the complaint to contain a short and plain statement of the claim. (Doc. 3). Plaintiff was ordered to file an amended complaint setting forth in clear, short, and concise terms, the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each claim in no more than twenty pages. (*Id.* at PageID159-60). Plaintiff has now filed an amended complaint in compliance with the Court's Order.

    Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 by separate order.

    This matter is now before the Court for a *sua sponte* review of the amended complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary

---

[1] When plaintiff initiated this action, he was an inmate at the Southern Ohio Correctional Facility (SOCF). On March 4, 2020, plaintiff filed a notice of change of address, indicating that he has a new address at a facility in Dayton, Ohio. (*See* Doc. 6). The Ohio Department of Rehabilitation and Correction's website indicates that plaintiff is currently under APA supervision. The ODRC website was viewed at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A686539.

relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

**Screening of Amended Complaint**

**A.      Legal Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

**B. Allegations**

Plaintiff's amended complaint includes allegations against twelve defendants, in their individual and official capacities, concerning incidents that occurred at the SOCF beginning on September 25, 2017. (Doc. 5). Plaintiff alleges that on the morning of September 25, 2017,

defendant correctional officer John Doe 1 was escorting another inmate, "Inmate Lewis," to the shower. (Doc. 5, at PageID 171). Plaintiff asserts that Lewis stopped at plaintiff's cell, exposed himself to plaintiff, placed his genitals in plaintiff's cell, and threatened to rape him. (*Id*.). Plaintiff asserts that John Doe No. 1 observed Lewis's alleged behavior. (*Id*.). Plaintiff alleges that when returning from the shower Lewis again exposed himself and threatened to rape plaintiff. (*Id.)*. Plaintiff alleges that he asked to speak to a "white shirt," but John Doe No. 1 told plaintiff to "stop snitching and man up." (*Id*., at PageID. 172).

Plaintiff alleges that on September 26, 2017, defendant correctional officer Baker escorted Lewis past plaintiff's cell to the shower. (*Id*.). Plaintiff alleges that Lewis told Baker that Lewis was going to expose himself to plaintiff and Baker said that "he did not care what [Lewis] had done to the plaintiff just don't stick your dick inside his cell bars (plaintiff cell) like you did yesterday while I was working K2 control booth." (*Id*.). Plaintiff asserts that Lewis exposed himself and plaintiff became angry. (*Id*.). According to plaintiff, Baker told plaintiff that if he made a scene Baker would spray him with "OC spray" and put him in a "slammer cell." (*Id*. at PageID 173). Plaintiff asserts that he said nothing further because he did not want to be sprayed or placed in a slammer cell. (*Id*.).

Plaintiff alleges that on October 4, 2017, Lewis again exposed himself and threatened to rape plaintiff when defendant correctional officer Butterbaugh escorted Lewis from the shower. (Doc. 5, at PageID 173). Plaintiff asserts that when he asked Butterbaugh if he was going to do anything Butterbaugh told plaintiff to shut-up and told Lewis, "Fuck him . . . I can't stand that bitch, one of y'all need to fuck him up!" (*Id*.).

On October 6, 2017, plaintiff alleges that Lewis exposed himself and threatened to rape plaintiff when plaintiff was being led to a phone call with his attorney. Plaintiff alleges that

4

defendant correctional officers Hutchinson and John Doe No. 2 allowed Lewis's behavior. (Doc. 5, at PageID 173-74). Plaintiff alleges that when Lewis threatened to rape plaintiff, Hutchinson laughed and told John Doe No. 2, "this is how we treat motherfuckers like him, he tried to rape a female officer at CRC that's why he's at SOCF, no one likes him here!" (*Id*., at PageID 175).

Plaintiff asserts that when he reached the "bullpen" he told defendant Sargent Dillow what happened and Dillow told plaintiff that Lewis would "get his". (*Id*.). Plaintiff states that he also told defendants case manager O'Conners, correctional officer Engelhardt, and unit manager Oppy what happened. (*Id*.).[2] Defendant Oppy allegedly told plaintiff that "he was not brung over to the unit to tell on Inmate Lewis." (*Id.*). Plaintiff alleges that when he said that he wanted to make a "PREA" [Prison Rape Elimination Act] call Engelhardt responded that plaintiff was better offer telling his mother because no one cared. (*Id.*).

Plaintiff alleges that when he and O'Conners were waiting for plaintiff's call in another office he again told O'Conners what had happened on September 25, September 26, October 4, and October 6, 2017. (*Id*., at PageID 176). O'Conners allegedly told plaintiff to "stop acting like a bitch" and to send a "kite" to defendant PREA investigator Chuck Smith. (*Id*.). When plaintiff asked O'Conners whether anyone was going to replay the cameras or remove Lewis, O'Conners allegedly told plaintiff that he must first file a complaint to Smith. (*Id*.). Plaintiff further alleges that when he was on the phone with his attorney he asked Oppy, who had come into the office to retrieve copies, whether he could make a PREA call and Oppy said "yes." (*Id*.).

Plaintiff alleges that when he finished his phone call he stopped at O'Conners' office, where Oppy and Engelhardt were, and asked Oppy to let plaintiff make his PREA call. (*Id*.).

---

[2]In his amended complaint, plaintiff variously spells defendant O'Conners name "O'Conner," "O'Connor," and "O'Connors," defendant Engelhardt's name "Engelhardt" and "Englehardt," and defendant Salyers's name "Salyers" and "Saylers." Herein, these defendants' names are spelled O'Conners, Engelhardt, and Salyers to reflect the spelling used by the Clerk's Office in the case caption of this lawsuit.

When Oppy and plaintiff left the office, Engelhardt allegedly announced to the inmates in the K2 South Unit that plaintiff was making a PREA call on Lewis. (*Id.*). Plaintiff alleges that he asked Oppy whether he was going to write up Engelhardt and Oppy said "no". (*Id.*).

Plaintiff alleges that on October 16, 2017, he sent an Informal Complaint Resolution (ICR) to Unit Manager Davis, who is not named as a defendant, with a copy to Institutional Inspector Mahlman, who is not named as a defendant, against defendants John Doe Nos. 1 and 2, Baker, Hutchinson, Denner,[3] Butterbaugh, Engelhardt, Dillow, O'Conners, and Oppy regarding the events alleged to have occurred between September 25, 2017 and October 6, 2017. (Doc. 5, at PageID 177).

Plaintiff alleges that on November 2, 2017, he requested a Notice of Grievance (NOG) from Mahlman to file a complaint with Davis against the defendants named in plaintiff's October 16, 2017 ICR. (*Id.*) Plaintiff asserts that Mahlman denied his request, stating plaintiff was out of time to file a complaint, even though he had stated in his November 2, 2017 request that he had not yet received a response from Davis on his October 16, 2017 ICR. (*Id.*).

Plaintiff alleges that Smith interviewed him on November 6, 2017, regarding the complaints plaintiff had made in his October 6, 2017 PREA call. (Doc. 5, at PageID 177). Smith allegedly told plaintiff he would watch "DVR" footage and interview the officers named in plaintiff's PREA complaint. (Doc. 5, at PageID 177-78). Plaintiff alleges that on November 7, 2017, he sent another request to Mahlman for a NOG but never received a response. (*Id.*, at PageID 178).

Plaintiff claims that on November 9, 2017, defendant Assistant Mental Health Administrator Carey Bryan allowed plaintiff to review some of his mental health records. (*Id.*).

---

[3]Correctional Officer Denner is mentioned a single time in plaintiff's amended complaint but is not named as a defendant. Further, plaintiff does not raise any claims against Denner in the amended complaint.

6

Plaintiff asserts that Bryan never told him he was being escorted to the mental health area for a mental-health evaluation related to his October 6, 2017 PREA complaint. (*Id*.). Plaintiff alleges that Bryan "conspired with mental health administrator Ms. Salyers in falsifying the plaintiff's mental health and PREA confidentiality evaluation documents in connection with an ongoing investigation." (*Id*.).

Plaintiff claims that he followed-up with Smith on December 6, 2017. (*Id*.). Plaintiff alleges that Smith told plaintiff that Bryan said she had spoken with plaintiff and that plaintiff never mentioned complaints of sexual harassment. (*Id.*). Plaintiff alleges that, upon learning this information from Smith, plaintiff informed Smith that plaintiff felt suicidal. (*Id*.).

According to plaintiff, he was then taken to Mental Health, where he spoke with defendant Salyers. (Doc. 5, at PageID 179). Plaintiff alleges that he asked Salyers when plaintiff would be seen for his PREA confidentiality evaluation and Salyers allegedly said that plaintiff had been evaluated on November 9, 2017. (*Id*.).

Plaintiff alleges that, on December 15, 2017, he filed an ICR against Salyers with her supervisor, Deputy Warden of Special Services Codogan, who is not named as a defendant, for allegedly falsifying mental health records. (Id.). Codogan responded on December 31, 2017. (*Id*.). Plaintiff asserts that he requested a NOG from Mahlman on January 2, 2018, which he received on January 3, 2018. (*Id*.). Plaintiff alleges that he filed a grievance on January 8, 2018, which Mahlman denied on January 22, 2018. (*Id*). Plaintiff allegedly appealed the grievance on January 23, 2018, and is still waiting for a response. (Doc. 5, at PageID 180).

Plaintiff also claims that on January 23, 2018, he filed a kite with Bryan, regarding the alleged events on November 9, 2017, and a NOG against Mahlman. (*Id*.). Plaintiff asserts that Ohio Department of Rehabilitation and Correction Chief Inspector Roger Wilson, who is not

7

named as defendant, denied his grievance against Mahlman on October 4, 2018. (Doc. 5, at PageID 181).

Based on the above factual allegations, plaintiff brings several claims. First, plaintiff claims that defendants John Doe No. 1, Baker, and Butterbaugh violated his Eighth and Fourteenth Amendment rights by exercising deliberate indifference to plaintiff's health and safety by allowing, encouraging, and failing to intervene to prevent sexual harassment by inmate Lewis. (Doc. 5. at PageID 181). Plaintiff also brings Eighth and Fourteenth Amendment claims against defendants Hutchinson and John Doe No. 2 based on plaintiff's allegation that these defendants encouraged and failed to intervene to prevent sexual harassment by inmate Lewis. (*Id.*). Plaintiff further claims that defendants Dillow, Oppy, O'Conners, and Engelhardt violated plaintiff's Eighth and Fourteenth Amendment rights by exercising deliberate indifference to plaintiff's health and safety by failing to take corrective action and failing to save DVR footage when plaintiff complained to them regarding Inmate Lewis's alleged conduct. (*Id.* at PageID 182). Additionally, plaintiff claims that defendant Smith and Mahlman[4] conspired with defendants John Doe Nos. 1 and 2, Baker, Butterbaugh, Hutchinson, Engelhardt, Oppy, O'Conners, and Dillow to violate plaintiff's rights under the Eighth and Fourteenth Amendments by failing to take corrective action and failing to save DVR footage. (*Id.*). Finally, plaintiff alleges that defendants Salyers and Bryan conspired with the above defendants by falsifying plaintiff's mental health records concerning his PREA confidentiality mental health evaluation. (*Id*. at PageID 183).

Plaintiff seeks declaratory, injunctive, monetary relief. (*Id.* at PageID 183-84).

---

[4]Mahlman is not named as a defendant in this case. (*See* Doc. 5, at PageID 168-71). To the extent that plaintiff asserts claims against non-defendants, those claims are subject to dismissal. Further, for the reasons set forth below, plaintiff's claims against Mahlman fail as a matter of law.

### C. Analysis

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff's claims against defendants John Doe Nos. 1 and 2, Baker, Butterbaugh, and Hutchinson under the Eighth and Fourteenth Amendments are deserving of further development and may proceed at this juncture. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). The Court also concludes that plaintiff's claim against defendant Engelhardt under the Eighth and Fourteenth Amendments is deserving of further development to the extent that plaintiff alleges that Engelhardt announced to the inmates in the K2 South Unit that plaintiff was making a PREA call against inmate Lewis. However, plaintiff's remaining claims should be dismissed for failure to state a claim upon which relief may be granted.

First, the complaint should be dismissed as to all defendants in their official capacities to the extent that plaintiff seeks money damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S.

58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

Next, plaintiff's claims against defendants Dillow, Oppy, and O'Conners should be dismissed. Plaintiff seeks to hold these defendants liable based on their alleged failure to investigate or take corrective action in response to his complaints. However, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

To the extent that plaintiff wishes to hold any of these defendants liable in their supervisory capacity, it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tenn. Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421

(6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Therefore, in the absence of any such allegation, plaintiff's claim that defendants Dillow, Oppy, and O'Conners failed to take corrective action after they were notified of plaintiff's concerns is simply insufficient to give rise to an actionable § 1983 claim.

For the same reasons, plaintiff's claims against defendant Engelhardt for failing to take corrective action are subject to dismissal. Similarly, to the extent that plaintiff intends to assert Eighth and Fourteenth Amendment claims against defendant Smith and Mahlman for failure to take corrective action, such claims are also subject to dismissal.

Moreover, to the extent that plaintiff seeks to hold defendants Dillow, Oppy, O'Conners, and Engelhardt liable for threats and verbal harassment, his allegations do not rise to the level of a constitutional violation. It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (in affirming dismissal of Eighth Amendment claim based on a correctional employee's "alleged offer of sexual favors," the Sixth Circuit stated that "verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim"); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) (and Sixth Circuit cases cited therein) (dismissing an inmate's § 1983 claim alleging "verbal harassment" and "abusive language" by a state correctional officer). *Cf. Matthews v. Norristown*

*State Hosp.,* 528 F. App'x 115, 119 (3d Cir. 2013) (and Sixth, Fifth and Tenth Circuit cases cited therein) ("mere threatening language does not amount to a constitutional violation"). Therefore, plaintiff has not stated a viable claim for relief under the Eighth Amendment to the extent he alleges that defendants verbally harassed and threatened him.

Additionally, plaintiff's Eighth and Fourteenth Amendment claims against Dillow, Oppy, O'Conners, Engelhardt, Smith, and Mahlman for allegedly failing to preserve video evidence are subject to dismissal. An inmate does not have a property interest in prison video footage. *See, e.g., Berg v. Babcock*, No. 18-cv-842-jdp, 2019 WL 3083070, at *6 (W.D. Wisc. May 29, 2019) (dismissing claim that destruction of video evidence violated inmate's Due Process right). Further, courts have assessed Eighth Amendment claims in this context under the fundamental right to access the courts. *See, e.g.*, *Jenkins v. Hutcheson*, No. 6:15-cv-50, 2015 WL 9480037, at *2 (S.D. Ga. Dec. 29, 2015) (Report and Recommendation), *adopted*, 2016 WL 410039 (S.D. Ga. Feb. 2, 2016). To plead a claim for denial of access to the courts, an inmate must plead and demonstrate that the lack of legal materials or the shortcomings in the prison legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). In addition, when bringing a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, "only prisoners with non-frivolous underlying claims can have standing

12

to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405-406 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 353 & n. 3). Plaintiff fails to allege any facts showing that he suffered an actual injury in any nonfrivolous legal proceeding as a result of the alleged failure to preserve video evidence. Without such allegations, plaintiff fails to state a claim for relief.[5]

Further, plaintiff's conclusory conspiracy claims against Smith, Mahlman, Bryan, and Salyers should be dismissed. It is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010). *See also Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. Aug. 16, 2019) ("The plaintiff must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.") (internal quotation marks omitted); *Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir. 1987)) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity"). Here, plaintiff's factual allegations are insufficient to suggest that these defendants shared a conspiratorial objective or otherwise planned together to deprive him of a constitutionally-protected right. Therefore, plaintiff's vague, unsubstantiated and conclusory claims against defendants Smith, Mahlman, Bryan, and Salyers based on a conspiracy theory lack the requisite specificity to state a cognizable § 1983 claim.

Finally, to the extent plaintiff seeks to bring a claim against any defendant under PREA such a claim must be dismissed because PREA does not create a private right of action. *See,*

---

[5]This conclusion does not foreclose the possibility of a discovery violation or a spoliation instruction. *See* Fed. R. Civ. P. 37(e).

*e.g.*, *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action.").

Accordingly, in sum, plaintiff's Eighth and Fourteenth Amendment claims against defendants John Doe Nos. 1 and 2, Baker, Butterbaugh, and Hutchinson are deserving of further development and may proceed at this juncture. The Court also concludes that plaintiff's claim against defendant Engelhardt under the Eighth and Fourteenth Amendments is deserving of further development to the extent that plaintiff alleges that Engelhardt announced to the inmates in the K2 South Unit that plaintiff was making a PREA call against inmate Lewis. Having found that plaintiff's remaining claims fail to state a claim upon which relief may be granted, these claims should be dismissed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's amended complaint (Doc. 5) be **DISMISSED** with **prejudice**, with the **exception of** plaintiff's Eighth and Fourteenth Amendment claims against defendants John Doe Nos. 1 and 2, Baker, Butterbaugh, and Hutchinson, and plaintiff's Eighth and Fourteenth Amendment claims against defendant Engelhardt for allegedly announcing to the inmates in the K2 South Unit that plaintiff was making a PREA call against inmate Lewis. *See* 28 U.S.C. §§ 1915(e)(2)(B).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the amended complaint, summons, the separate Order issued this date granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Baker, Butterbaugh, Hutchinson, and Engelhardt as directed by plaintiff, with costs of service to be advanced by the United States.

2. Before service may be issued upon defendants John Doe Nos. 1 and 2, plaintiff must file a motion to issue service setting forth the identities of the unidentified defendants. Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed defendants through discovery. Plaintiff is advised that no service will be issued on the unnamed defendants unless plaintiff complies with this Order.

3. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| TERRY TYRONE PULLEN, JR.,<br>Plaintiff,<br><br>vs.<br><br>LT. BROUGHTON, *et al*.,<br>Defendants. | Case No. 1:19-cv-811<br><br>Cole, J.<br>Bowman, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).