## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**TERRY TYRONE PULLEN, JR.,**

      **Plaintiff,**

                                   **Case No. 1:19-cv-811**

      **v.**                            **JUDGE DOUGLAS R. COLE**

                                   **Magistrate Judge Gentry**

**LT. BROUGHTON, *et al.*,**

      **Defendants.**

### OPINION AND ORDER

This cause is before the Court on the Magistrate Judge's February 7, 2023, Report and Recommendation ("R&R," Doc. 57) advising the Court to grant Defendants Baker, Butterbaugh, Engelhardt, and Hutchinson's Motion for Summary Judgment (Doc. 40) and dismiss Plaintiff Terry Tyrone Pullen Jr.'s claims against them with prejudice. For the reasons discussed below, the Court **ADOPTS** the R&R (Doc. 57), **GRANTS** Defendants' Motion, and **DISMISSES** Pullen's claims against Defendants Baker, Butterbaugh, Engelhardt, and Hutchinson **WITH PREJUDICE**. Further, the Court **ORDERS** Pullen to **SHOW CAUSE**, no later than March 31, 2023, why the Court should not dismiss this action as against John Doe 1 and John Doe 2 without prejudice for failure to effect service and, relatedly, why the Court should instead allow an extension of time to effect service.

The Magistrate Judge has capably summarized Pullen's factual allegations, as relevant here, from his Amended Complaint:

In the fall of 2017, Plaintiff was incarcerated at the Southern Ohio Correctional Facility (SOCF) and housed near an inmate named Bryan Lewis. On September 25, 2017, correctional officer Defendant John Doe 1 escorted Lewis to the shower. Lewis stopped outside of his cell, exposed himself to Plaintiff and placed his genitals inside of Plaintiff's cell. John Doe 1 observed the encounter. Lewis exposed himself again when returning from the shower and threatened to rape Plaintiff. Plaintiff told John Doe 1 that he wanted to speak to a "white shirt," but John Doe 1 told him to "stop snitching and man up."

The next day, correctional officer Defendant Baker escorted Lewis to the shower. Lewis informed Baker that he was going to expose himself to Plaintiff. Baker told Lewis that "he did not care what he had done to the Plaintiff just don't stick your dick inside his cell bars [] like you did yesterday while I was working K2 control booth." Lewis exposed himself and Plaintiff became angry. Baker told Plaintiff that if he made a scene, Baker would spray him with "OC spray" and put him in a "slammer cell." Plaintiff did not say anything else because he did not want to be sprayed or placed in a slammer cell.

On October 4, 2017, correctional officer Defendant Butterbaugh was escorting Lewis from the shower back to his cell when Lewis again exposed himself to Plaintiff and threatened to rape him. Plaintiff asked Butterbaugh if he planned to do anything, and Butterbaugh told him to "shut the fuck up," and told Lewis: "Fuck him … I can't stand that bitch, one of y'all need to fuck him up!"

On October 6, 2017, Lewis exposed himself again to Plaintiff when correctional officers Defendant Hutchinson and Defendant John Doe 2 were leading him to a phone call with his attorney. Lewis again threatened to rape Plaintiff. John Doe 2 and Hutchinson did not do anything to stop Lewis' behavior. Hutchinson said: "[T]his is how we treat motherfuckers like him, he tried to rape a female officer at CRC that's why he's at SOCF, no one likes him here!" Plaintiff complained to various SOCF personnel about these events.

Plaintiff said he that he wanted to call the PREA[1] hotline to complain about Lewis's behavior. Defendant Engelhardt told Plaintiff that he was "better off telling [his] mother because no one cares." When Plaintiff left to make the PREA call, Engelhardt announced to the inmates in the K2 South Unit that Plaintiff was making a PREA call on Lewis.

(Doc. 57, #611–13 (citing and quoting Am. Compl., Doc. 5, #171–76)).

---

[1] The Prison Rape Elimination Act or PREA concerns complaints of sexual abuse and sexual harassment within prison systems. (*See* Doc. 35, #364).

Following these events, Pullen began proceedings on September 23, 2019, by moving to file his Complaint in forma pauperis. (Doc. 1). Before the Magistrate Judge could rule on the Motion, Pullen filed an Amended Complaint on December 23, 2019. (Doc. 5). Pullen's Amended Complaint named a dozen defendants, all both in their individual and official capacities. (*Id.* at #168–71). Relevant here, Pullen alleged Defendants John Doe 1, John Doe 2, Baker, Butterbaugh, and Hutchinson violated his constitutional right to be free from sexual assault or abuse, specifically by their deliberate indifference to Lewis's sexual misconduct and threats. (*Id.* at #181). Pullen also alleged Defendant Engelhardt violated his constitutional rights by being deliberately indifferent to Pullen's risk of harm from other inmates after Engelhardt announced Pullen's planned PREA call. (*Id.* at #176, 181).

The Magistrate Judge screened the Amended Complaint under 28 U.S.C. § 1915. On July 27, 2020, the Magistrate Judge granted Pullen leave to file in forma pauperis. (Doc. 7). But she also recommended that the Court only permit the case to proceed on Pullen's "Eighth and Fourteenth Amendment claims against defendants John Doe Nos. 1 and 2, Baker, Butterbaugh, and Hutchinson, and [his] Eighth and Fourteenth Amendment claims against defendant Engelhardt for allegedly announcing to the inmates in the K2 South Unit that plaintiff was making a PREA call against inmate Lewis." (Doc. 8, #207). The Court adopted that recommendation on December 30, 2021. (Doc. 30).

3

Summons were issued to Baker, Butterbaugh, Hutchinson, and Engelhardt (Doc. 9), but not John Doe 1 or John Doe 2. To this day, Pullen has neither identified nor served John Doe 1 or John Doe 2.

On March 8, 2022, Defendants Baker, Butterbaugh, Hutchinson, and Engelhardt moved for summary judgment. (Doc. 40). Defendants argued they were entitled to summary judgment because (1) Pullen did not exhaust administrative remedies, (2) Pullen's claims failed as a matter of law, and (3) Pullen had not alleged a sufficient physical injury through which he could recover mental or emotional damages. (*See id.*).

With their Motion, Defendants also submitted Pullen's deposition. (Docs. 35, 36). There, Pullen described how all SOCF inmates experienced "23-hour to 24-hour controlled movement." (Doc. 35, #306–07). In other words, inmates remained in their cells 23 to 24 hours a day and were handcuffed and supervised whenever they left their cells. (*Id.* at #320, 329). Pullen also described how Lewis primarily exposed himself to Pullen when Lewis was (1) outside Pullen's cell, (2) securely handcuffed, and (3) being escorted by corrections officers. (*See id.* at #319–21). Pullen testified to only one relevant occasion, on October 6, 2017, where Lewis exposed himself while the two were both out of their cells at the same time. (*Id.* at #350–59). Although Lewis made verbal threats to put his genitals on Pullen's leg, Lewis never physically contacted Pullen.[2] (*Id.*).

---

[2] Pullen's Amended Complaint also suggests Lewis never physically contacted Pullen, only alleging Pullen "was mentally and emotionally abused" by the incident. (Doc. 5, #173–74).

Despite ample opportunity, Pullen did not respond to Defendants' March 8 Motion for Summary Judgment. To start, the Magistrate Judge directed Pullen to respond no later than June 13, 2022. (Doc 45). But soon after, Pullen updated his mailing address. (Doc. 46). Given the uncertainty around whether Pullen received notice of the June 13 deadline, the Magistrate issued an Amended Order, moving the date back to June 24, 2022. (Doc. 47). Pullen then notified the Court that he had not received Defendants' Motion at his updated address. (Doc. 48). The Magistrate ordered Defendants to re-send their Motion to Pullen. (Doc. 49). Yet when the Magistrate mailed a copy of *that* Order to Pullen, the Postal Service returned the Order as "undeliverable." (Doc. 51). Finally, on November 29, Pullen went in person to the Federal Courthouse in Dayton, Ohio, to receive a copy of Defendants' Motion.[3]

In light of Pullen's trouble obtaining the Motion, the Magistrate Judge on December 16, 2022, again extended the time for Pullen to respond. (Doc. 54). This time, the Magistrate gave him until January 9, 2023. (*Id.* at #602). But that extension came with a warning. The Magistrate Judge "placed [Pullen] on notice that if he does not respond to Defendants Motion in the time allowed, the Court will proceed to decide Defendants' Motion and [Pullen] will waive any arguments that he may have

---

[3] Pullen's troubles in receiving filings are perhaps attributable to his frequent changes in mailing address. During this litigation, he has noticed 12 different changes of address. That said, the Court is sympathetic to his housing challenges as a recently released inmate. He is not alone in that struggle. *See Where 'Returning Citizens' Find Housing After Prison*, Pew Charitable Trust (Apr. 23, 2019), https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2019/04/23/where-returning-citizens-find-housing-after-prison ("[C]riminal justice experts say [there] is a housing crisis among the formerly incarcerated, particularly among those recently released from prison."). Still, Pullen's circumstances do not change that he has an obligation to prosecute his case, including an obligation to keep his address current so that he can receive filings.

raised in opposition to the Motion." (*Id.* at #603). That Order apparently reached Pullen, as it did not come back as undelivered. Still, Pullen never responded.

On February 1, 2023, the Magistrate issued a Show Cause Order directing Pullen to explain why the Court should not dismiss the claims against John Doe 1 and John Doe 2 for Pullen's failure to identify and serve them. (Doc. 56). Pullen had until February 17 to respond. (*Id.*). But despite the Clerk mailing the Order to the Pullen's address on file, the Postal Service returned the Show Cause Order to the Court as "undeliverable." (Doc. 58).

On February 7, 2023, the Magistrate Judge issued an R&R recommending the Court grant Defendants' Motion for Summary Judgment. (Doc. 57). The R&R began by recognizing that Defendants bore the initial burden to show the lack of a genuine issue of material fact, after which the burden shifted to Pullen to identify evidence of the same. (*Id.* at #615–16). Then, the R&R concluded Pullen's deliberate indifference claims against Baker, Butterbaugh, and Hutchinson lacked a genuine issue of material fact that he suffered an objectively substantial risk of serious harm. (*Id.* at #617–19). Because SOCF locked all inmates in cells for 23 to 24 hours a day and officers closely monitored and handcuffed inmates whenever out of their cells, the R&R found Pullen faced no substantial risk of harm. (*Id.*). Finally, the R&R drew a similar conclusion about Pullen's claim against Engelhardt. (*Id.* at #620–21).

Beyond recommending the Court grant Defendants summary judgment and dismiss Pullen's claims, the R&R advised Pullen that failing to object within the 17 days specified in the R&R may cause forfeiture of rights on appeal, which includes

6

the right to District Court review. (*See id.* at #621–22); *see also Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed."); *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) (noting "fail[ure] to file an objection to the magistrate judge's R&R ... is forfeiture"); 28 U.S.C. § 636(b)(1)(C). Pullen did not object, and the time to do so has since passed.

But the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing cases). Consistent with that admonition, the Court has reviewed the R&R and determined that it does not contain "clear error on [its] face." Fed. R. Civ. P. 72(b) (advisory committee notes).

Defendants, as movants for summary judgment, bear the initial burden to show the lack of a genuine issue of material fact in the record evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Afterward, Pullen can avoid summary judgment only by pointing to evidence sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making that determination, though, the Court must view the evidence in the light most favorable to Pullen. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Both of Pullen's remaining claims concern the corrections officers' supposed deliberate indifference towards Pullen's risk of harm from other inmates. *See, e.g.*, *Morgan by next friend Morgan v. Wayne County*, 33 F.4th 320, 326 (6th Cir. 2022) (recognizing "[a]n inmate's right to be free from prison violence" and the "right to be free from deliberate indifference to assault and sexual abuse"). Any Eighth Amendment deliberate indifference claim, though, requires a showing of an objectively "substantial risk of serious harm." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (recognizing that deliberate indifference by prison staff requires "the alleged mistreatment [be] objectively serious" with an accompanying "substantial risk of serious harm"); *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). And while sexual harassment without physical contact can sometimes be "sufficiently serious" to meet the objective prong,[4] "'isolated, brief, and not severe' instances of sexual harassment do not give rise to Eighth Amendment violations." *Rafferty v. Trumbull County*, 915 F.3d 1087, 1095–96 (6th Cir. 2019) (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005)) (holding that demands by a corrections officer for an inmate to expose her breasts and masturbate met the objective prong).

---

[4] The Prison Litigation Reform Act prohibits compensatory damages for an inmate's mental or emotional injury unless there is an accompanying physical injury. 42 U.S.C. § 1997e(e). But the Sixth Circuit has suggested an inmate can still pursue nominal, punitive, injunctive, and declaratory relief for mental and emotional injuries even without an accompanying physical injury, as well as compensatory relief for "constitutional injuries." *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020); *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). This seemingly includes Eighth Amendment violations. *See Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (suggesting the PLRA does not prohibit "injunctive relief, nominal damages, compensatory or punitive damages for [Eighth Amendment] violations"). Granted, the line seems awfully thin between mental/emotional injuries and injuries from cruel and unusual punishment that do not involve physical harm.

Defendants have met their initial burden on summary judgment. The record evidence, including Pullen's deposition testimony, shows he did not experience a substantial risk of serious harm as that term is understood under the Eighth Amendment. Lewis never made physical contact with Pullen, and Pullen was often safely secured in his cell when Lewis exposed himself. (Doc. 35, #319). Even when the two were out of their cells together on October 6, 2017, two officers escorted them and securely handcuffed Lewis behind his back. (*Id.* at #350–59).

And Lewis's act of exposing himself and his verbal harassment, while both deplorable, are not severe enough to give rise to claim under the Eighth Amendment. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (noting that verbal harassment normally does not meet the objective prong); *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017) (holding that a nurse exposing his buttocks to an inmate did not meet the objective prong). In reaching that conclusion, the Court does not downplay or endorse Lewis's conduct. The Court simply recognizes that the record does not support Pullen's deliberate indifference claim.

As for Engelhardt, the record evidence does not show any "substantial risk of serious harm" from his announcement that Pullen intended to place a PREA call. True, labeling an inmate a "snitch" can be serious enough. *Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022). But context matters. All SOCF inmates are always either locked in their cell or handcuffed and escorted. (Doc. 35, #320, 329).

Given this hyper-secure environment, the record nowhere indicates what "serious harm" Pullen faced.[5] (*Id.* at #329; Doc. 40, #517).

In short, Defendants Baker, Butterbaugh, Hutchinson, and Engelhardt have shown an absence of evidence satisfying an essential element of Pullen's two remaining claims. Pullen, having failed to respond, has not rebutted this showing. The R&R therefore correctly found these Defendants are entitled to summary judgment, and the Court **ADOPTS** the R&R (Doc. 57) in full.

That leaves John Doe 1 and John Doe 2. Pullen has never served—nor requested an extension to locate and serve—these two defendants. As a general matter, a plaintiff must serve a defendant within 90 days after the complaint is filed unless "the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). Otherwise, the Court can dismiss those defendants "on motion" from a party "or on its own after notice to the plaintiff." *Id.*; *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) ("Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal."). So after filing his Amended Complaint on December 23, 2019, Pullen needed to identify and serve John Doe 1 and John Doe 2 within ninety days or request an extension of time to do so. *See Petty v. County of*

---

[5] Further, courts have suggested an Eighth Amendment claim for deliberate indifference based on labeling an inmate a "snitch" often requires a showing of actual physical harm. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) ("Thompson's claim that he was endangered by being labeled a snitch was unsupported by any allegation of resultant harm."); *Sapp v. Edington*, No. 2:15-cv-12378, 2015 WL 4620566, at *2 (E.D. Mich. July 31, 2015) ("[T]o state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch."); *Spotts v. Hock*, No. 10–353, 2011 WL 676942, at *3 (E.D. Ky. Feb. 16, 2011) (same).

*Franklin*, 478 F.3d 341, 344–46 (6th Cir. 2007). Even as of now, some thirty-eight months later, he has done neither.

But the matter of notice remains.[6] Under Rule 4(m), the Court must seek to afford Pullen "proper notice … prior to dismissing his claims" sua sponte for failure to timely effect service. *Reynosa v. Schultz*, 282 F. App'x 386, 393 (6th Cir. 2008). This can include actual or constructive notice. *See id.* at 392; *Smith-Bey v. Cripe*, 852 F.2d 592, 593 (D.C. Cir. 1988). But either way, "[t]he Sixth Circuit['s] preference is to give the plaintiff notice and an opportunity to perfect service." *Wesley v. Cuyahoga Cnty. Sheriff's Dep't*, No. 1:19-cv-1232, 2021 WL 1895007, at *3 (N.D. Ohio Mar. 18, 2021), *report and recommendation adopted*, 2021 WL 1572594 (N.D. Ohio Apr. 22, 2021).

The Court has tried to give Pullen notice. On February 1, 2023, the Magistrate Judge ordered Pullen to show cause why the Court should not dismiss John Doe 1 and John Doe 2 for Pullen's failure to timely effect service. (2/1/2023 Order to Show Cause). But that Order came back undeliverable. To date then, it is doubtful Pullen

---

[6] True, the identified Defendants requested the Court dismiss Pullen's claims against John Doe 1 and John Doe 2 in their Motion for Summary Judgment. They noted: "Plaintiff has never identified nor served Defendants John Doe #1 and/or John Doe #2. As a result, Plaintiff's claims against these two individuals should be dismissed." (Doc. 40, #518). And some courts have suggested an identified defendant may invoke Rule 4(m) to dismiss a plaintiff's claims against an absent defendant. *See, e.g., Moore v. Mich. Dep't of Corr.*, No. 10-13148, 2011 WL 1595069, at *3–4 (E.D. Mich. Mar. 23, 2011), *report and recommendation adopted*, 2011 WL 1627081 (E.D. Mich. Apr. 27, 2011). The Court hesitates to take this approach though. A motion to dismiss for untimely service proceeds under Rule 12(b)(5). *Schmidt v. Jefferson Cnty. Bd. of Educ.*, No. 3:13-cv-694, 2014 WL 1877669, at *1 (W.D. Ky. May 9, 2014). But Rule 12 defenses are personal defenses to be invoked by the party having claim to them. *See* Fed. R. Civ. P. 12(b). As this is not a defendant class action, *see* Fed. R. Civ. P. 23(a) (permitting defendant class actions), the identified Defendants cannot assert defenses on behalf of absent parties. And anyway, Defendants cannot move under Rule 12(b)(5) because they did not preserve that affirmative defense in their Answer. (*See* Doc. 13).

11

received actual notice that the Court intends to dismiss his case as against John Doe 1 and John Doe 2.[7]

That said, it appears Pullen has twice more updated his address. First, in a letter he dated February 13, 2023, Pullen informed the Clerk of Court his mailing address had again changed. Although that letter accompanied a motion for a different case, he requested the Clerk "change [his] current address to 362 Beckman Ave., Tortwood, Ohio 45426, for the record." (*Pullen v. Tabor, et al.*, 1:20-cv-50, Doc. 52, #407). (The Court assumes Pullen means "Trotwood," whose zip-code is 45426.) From the Court's reading, Pullen meant for this change to apply to all matters he has pending before this Court, including this case. Second, in a letter he dated March 1, 2023, Pullen again noticed a change of address in that same case. (*Pullen v. Tabor, et al.*, 1:20-cv-50, Doc. 55, #431). He requested "[a]ll future correspondence … be directed to … 563 Heather Dr., Apt. 3(A), Dayton, Ohio 45405." (*Id.*).

Therefore, the Court will attempt *one final time* to give Pullen notice—this time mailing to his Heather Dr. address. The Court **ORDERS** Pullen to **SHOW CAUSE**, no later than March 31, 2023, why the Court should not dismiss this action as against John Doe 1 and John Doe 2 without prejudice for failure to effect service and why the Court should allow an extension of time to effect service. No further notices will be issued.

---

[7] Oddly, Pullen updated his address to "732 Beckman St., Dayton, OH 45410" on January 20, 2023, (Doc. 55), and the Clerk mailed the Order to that address on February 1, 2023, (Doc. 58). It is unclear why the Order did not reach Pullen.

In sum, the Court **ADOPTS** the R&R (Doc. 57) in full, **GRANTS** Defendants Baker, Butterbaugh, Engelhardt, and Hutchinson's Motion for Summary Judgment (Doc. 40), and **DISMISSES** Pullen's claims against them **WITH PREJUDICE**. Further, the Court **NOTIFIES** Pullen that the Court proposes to dismiss his claims against John Doe 1 and John Doe 2 without prejudice for failure to timely effectuate service. Thus, the Court **ORDERS** Pullen to **SHOW CAUSE**, no later than March 31, 2023, why the Court should not dismiss this action as against John Doe 1 and John Doe 2 without prejudice for failure to effect service and why the Court should allow an extension of time to effect service. Finally, the Court **DIRECTS** the Clerk to update Pullen's mailing address to "563 Heather Dr., Apt. 3(A), Dayton, Ohio 45405."

**SO ORDERED.**

March 7, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

13